1                   UNITED STATES DISTRICT COURT

2                    DISTRICT OF MASSACHUSETTS

3                              No. 1:12-cr-10015-WGY

4

5

6   UNITED STATES OF AMERICA

7

8   vs.

9

10  ROSALIND HERMAN

11

12                        *********

13

14                    For Jury Trial Before:
                       Judge William G. Young
15

16

17                    United States District Court
                      District of Massachusetts (Boston)
18                    One Courthouse Way
                      Boston, Massachusetts 02210
19                    Friday, April 1, 2016

20                        ********

21

22          REPORTER: RICHARD H. ROMANOW, RPR
                      Official Court Reporter
23                United States District Court
          One Courthouse Way, Room 5510, Boston, MA 02210
24                    bulldog@richromanow.com

25

<pre>
 1                    A P P E A R A N C E S

 2

 3   SARA M. BLOOM, ESQ.
     MARY B. MURRANE, ESQ.
 4      United States Attorney's Office
        J. Joseph Moakley U.S. Courthouse
 5      1 Courthouse Way, Suite 9200
        Boston, Massachusetts 02210
 6      (617) 748-3971
        Email: Sara.bloom@usdoj.gov
 7      For the United States

 8

 9   RAYMOND A. O'HARA, ESQ.
        Law Office of Raymond A. O'Hara
10      1 Exchange Place
        Worcester, Massachusetts 01608
11      (508) 831-7551
        Email: Oharalaw@hotmail.com
12  and
     JASON G. BENZAKEN, ESQ.
13      Benzaken and Wood, LLP
        1342 Belmont Street, Suite 102
14      Brockton, Massachusetts 02301
        (508) 897-0001
15      Email: Attorneybenzaken@gmail.com
        For the defendant
16

17

18

19

20

21

22

23

24

25
</pre>

1                         I N D E X

2

3    CHARGE CONFERENCE.............................    4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2          (No jury, 9:10 a.m.)

3          THE COURT:  Since we're waiting for a juror and,

4     Ms. Bloom, I understand this was your suggestion, and I

5     very much appreciate it, so let's talk about the charge.

6          I recognize that when you rest the defense will no

7     doubt move for a directed verdict, and I express no

8     opinion on that because I'll confront that when I get

9     there, but on the assumption that these matters are

10    going to go to the jury, I think it would be wise to go

11    over the charge now, and in that regard I have some

12    questions.

13         In terms of the substantive charge, you've heard

14    the substantive charge, but I think I can do better at

15    the end of the case.  This, um, obstruction of the tax

16    laws, which I guess is the way to say "tax evasion,"

17    what tax years -- to what tax years does that pertain?

18         MS. BLOOM:  I believe it pertains to 2003 through,

19    um, let me -- 2008 is for the years that are --

20         I don't think that's right.

21         THE COURT:  What's the indictment say?

22         MS. BLOOM:  That's what I was looking for.

23         THE COURT:  All right.

24         (Pause.)

25         MS. BLOOM:  It says beginning in or before January

1    2003 and continuing through in or about 2012.

2         THE COURT:  Oh, so the claim is that with respect

3    to all those years.  All right.

4         Now, my next question has to do with the four wire

5    fraud charges, um, identified by date, but if you could

6    go through each one of those and tell me what the actual

7    fraud is -- not that I intend to explain it, you'll be

8    talking about it in your closing, but what is the fraud

9    in each of those?

10        MS. BLOOM:  The fraud is the overall, um,

11   essentially the investment advisor scheme fraud, which

12   is to deceive the clients into putting their money in

13   what they think is --

14        THE COURT:  Yes, but since wire fraud each

15   communication can be a separate charge, you've charged

16   four.  What are the communications here?

17        MS. BLOOM:  Oh, the four wires are -- the first

18   three are wires by Mr. Connell, they're Exhibits 10, 11

19   and 12.

20        THE COURT:  And that supports Counts 4, 5 and 6?

21        MS. BLOOM:  Yes.

22        THE COURT:  And?

23        MS. BLOOM:  The 7 is Exhibit 424, which is an

24   e-mail from Mr. Caplitz, with a copy to Ms. Herman, to

25   Mr. Leuci about the hedge fund.

1          THE COURT:  Okay, the first three are to Connell,

2     right?

3          MS. BLOOM:  The first three are wires of money

4     from Connell into the accounts of the Knew Finance

5     Experts.

6          THE COURT:  I understand.  And the 424 is?

7          MS. BLOOM:  An e-mail from Mr. Caplitz to David

8     Savage and Carl Leuci with a copy to Ms. Herman.

9          THE COURT:  All right, which you claim is

10     fraudulent.  All right.  Thank you.

11          Now, as you've charged the conspiracy, I denied

12     Mr. O'Hara's motion to sever here and I really do think

13     it's, um --

14          MR. O'HARA:  Your Honor, if I may, can I apologize

15     for that?

16          THE COURT:  Yes.

17          MR. O'HARA:  I filed it late on Friday.  My

18     sisters informed me over the weekend that the issue had

19     already been brought to the Court's attention by

20     Attorney Denner and I meant to withdraw it.  Thank you

21     for denying it.

22          THE COURT:  Well, fine, but issues still remain.

23          It's easy for me to conceive, on the evidence I've

24     already heard, taking all intendments the government's

25     way, that there was a conspiracy that involved the

1    violation of the Investment Advisors Act and these

2    various wire frauds between these two.  That makes --

3    that hangs together because really the only difference

4    substantively between the two counts -- the two types of

5    counts are a violation of the Investment Advisory Act

6    has to be -- they have to be investment advisors, and

7    the wire fraud, it has to be wire communications, but

8    the fraud is identical.  So -- but this tax evasion, and

9    indeed the testimony that supports the tax evasion

10   charge, that is separate.

11       You claim that that is the same conspiracy?  It

12   seems to me like it's the same people, but they have two

13   different objectives there.

14       MS. BLOOM:  Well, um, I think that some of this

15   will be filled in, to some degree, by the tax summary

16   witness who will be coming on today, I hope, but I think

17   that part of the tax conspiracy is the failure to pay

18   taxes on the money that was stolen and the failure to

19   report the taxes.

20       THE COURT:  I agree, but --

21       MS. BLOOM:  And that this is a course of conduct

22   that these two people agreed together to --

23       THE COURT:  No, but you're arguing the case and as

24   to that you may well be to the jury there, but is it one

25   conspiracy or two conspiracies?

1        MS. BLOOM:  We believe it is properly considered

2   as one conspiracy particularly when you think about

3   it --

4        THE COURT:  So the aspects of the conspiracy --

5   though you don't have to know which laws you're

6   violating, is to, um -- is to, um, violate the

7   Investment Advisors Act, commit wire fraud, and underpay

8   your taxes?

9        MS. BLOOM:  Correct, your Honor.

10        THE COURT:  So if that's the intent, you rise and

11   fall on all three, it seems to me, they've got to be

12   convinced that that is the conspiracy?

13        MS. BLOOM:  That's correct, your Honor.

14        THE COURT:  And that's how you want it?

15        MS. BLOOM:  Yes, your Honor.

16        THE COURT:  Okay, I'm fine with that, at least

17   conceptually, and -- and it has this implication.  If

18   they don't think the deal was to underpay the taxes, but

19   they do think the other two thirds, if you will, then

20   she must be acquitted of conspiracy?  You follow?

21        MS. BLOOM:  They have to convict on the conspiracy

22   we charge, we do understand that.

23        THE COURT:  All right.

24        MS. BLOOM:  But they also can -- they've got wire

25   fraud, investment advisor fraud, so they have options.

1      THE COURT:  Well, that's your tactical position,

2   I'm just talking substantively.

3      Now, one last question on the Investment Advisors

4   Act and then I think I can go over this.

5      To violate the Investment Advisors Act, do you

6   have to be a registered investment advisor?

7      MS. BLOOM:  No, your Honor, and that was one thing

8   I wanted to bring to your attention and make sure we did

9   get an instruction on, is that it is sufficient if you

10   are a person associated with an investment advisor, I

11   believe we gave you a specific instruction on that.

12      THE COURT:  Yes, thank you.  All right.  Then,

13   um -- all right.

14      Well, then let me go over at least generally my

15   charge and then I'll have you press the specific claims.

16      You're familiar, and you can certainly get

17   familiar by conferring with Mr. Romanow, with precisely

18   how I charge and I will follow the same general format.

19      I will start out, as I have, before mentioning

20   that she started -- though I'll use the past tense now,

21   the trial innocent, genuinely innocent, um, and I don't

22   know whether she's going to take the stand, but assume

23   she does not, I will remind the jury that she need not

24   but I will state it in an affirmative way, "But look at

25   all the things that were done," Mr. O'Hara

1   cross-examined witnesses, Mr. O'Hara has been part of

2   the introduction of documents, and they've mentioned

3   them, and I will affirmatively say that he's done those

4   things.  And so I will emphasize -- having done that I

5   will emphasize that they are not to hold anything left

6   unexplained against Ms. Herman and that the burden of

7   proof, which is proof beyond a reasonable doubt, rests

8   entirely on the government and never shifts to her.

9        I will go over the function of the jury, um, once

10  again the verdict must be unanimous.  I will explain the

11  concepts of alternate jurors, in this case we have one.

12       I will next go to my function and explain that and

13  simply say that I am creating a legal framework within

14  which they and they alone decide what the evidence

15  shows.

16       Next I will talk about the methods of proof, I'll

17  distinguish between direct and circumstantial evidence

18  explaining both and saying that the case may be proved

19  entirely on circumstantial evidence.

20       I will, um, go over the sources of evidence in

21  this case.  The sources of evidence are the witnesses.

22  I will give a standard charge that they must subject the

23  testimony of Mr. Caplitz to special scrutiny.

24       If -- I will talk about exhibits and say that they

25  have the right to believe or disbelieve exhibits.  I

1    will make mention again of stipulations, I think those

2    are the sources of evidence in this case.

3         I will give a stock charge on drawing reasonable

4    inferences but say no guesswork or speculation.

5         At that point I will pass out to them the verdict

6    slip.  I'm not adopting the government's verdict slip

7    but in essence it will be much the same, though I'm

8    going to reorder the questions and I will explain what.

9         But as we're passing out the verdict slip, I want

10   to make mention of some things that are not evidence.  I

11   will, at that time again, emphasize that the fact that

12   Ms. Herman is here and we're having a trial doesn't

13   count against her in any way.

14        I do intend, unless the case goes downhill very

15   fast, and I don't expect it to, to compliment your all,

16   you have been excellent officers of the law and I

17   respect that.  And having said that, I will then tell

18   the jury, "Pay no attention to it," because they are not

19   going to decide the case based upon the conduct of the

20   attorneys.  But I do want to express my satisfaction

21   with that conduct and it's genuine.  And that leads into

22   saying that I have nothing to say about the evidence,

23   that that's beyond my purview and emphasizing that.

24        Now, having done that, then it's time to get to

25   the substantive charges and I will take each of the

1    substantive charges separately, I will emphasize that as

2    to each they are asked whether she is not guilty or

3    guilty.  I always put "not guilty" first, and I'm going

4    to do them in the following order.

5         First, the corrupt endeavor because, as the

6    evidence came in, and indeed as it's indicted, that

7    apparently is alleged to have started first, though it

8    is supposed to have continued over these various tax

9    years.

10        Then I will go to the violation of the Investment

11   Advisors Act.  I will give the charge that you don't

12   have to be a registered investment advisor so long as

13   you are, um -- I'll give the charge the government

14   wants, a person associated with an investment advisor in

15   this investment advice.

16        I will next give a generic wire fraud charge

17   without breaking -- I will explain why there's four

18   different charges and explain what that means.

19        I may have reference to the specific exhibits,

20   that might be the fairest way in my charge.  And so

21   telling them to focus specifically on Exhibits 10, 11

22   and 12 and 424, and relate them to the specific count.

23        And then I'll finish with conspiracy.  I do not

24   intend to give a *Pinkerton* charge here on the evidence

25   before the jury, I don't think one is warranted.  You in

1    essence have heard what the government has to prove as

2    to conspiracy and here, assuming we get past the

3    directed verdict, there is evidence from which they can

4    draw that conclusion.

5         I wind up by -- well, there's always the option to

6    charge first or last.  In this case the, um -- what's

7    important here is the factual predicate for these

8    charges not the complexity of the charges, the charges

9    aren't all that complex, so I think I'll go last.  I

10   don't need to explain the law to them in such detail,

11   you people are very conversant with the law.  So when we

12   get to that stage the rule --

13        Well, let me say something about a closing

14   argument.  A half an hour per side for closing argument.

15   The government gets a chance for rebuttal.  As the rule

16   requires, rebuttal has to be real rebuttal.  Now, you

17   could divide that up -- I'm not saying you should, but

18   you may, but it's not a chance to give two closing

19   arguments.  In essence you get about 2 minutes of

20   stemwinding rhetoric, but everything else has got to be

21   "Mr. O'Hara argued X, but remember Y," or in more

22   elegant formulation, and if it isn't, I'm crowding you

23   after about 2 minutes.  A rebuttal is just that, a

24   rebuttal, you go first, he makes the argument on behalf

25   of Ms. Herman, then you get very brief rebuttal.

1           Then my guess is we'll take a break, a brief

2    break, I'll come back, I'll give the charge.  My charge

3    ends up with how they deliberate together.

4           After I have charged, I will invite you to the

5    sidebar to make any corrections and to take any

6    exception to matters that I have not charged.  I may

7    make corrections.  If I make corrections, I will, in the

8    presence of the jury, in essence say to you, "Well, is

9    the correction all right, are you satisfied with the

10   supplemental charge?"  That does not waive what you've

11   said at the sidebar.  But if I try to correct something

12   and you say, "Satisfied," then at least the correction

13   satisfies.  But if I say, "No, I'm not giving that

14   charge," that is not intended as some sort of trap for

15   the unwary, you're just speaking to what last I said to

16   the jury, not the things you have reserved at the

17   sidebar.  You're all familiar with First Circuit law,

18   you have to be specific at the sidebar, that's where you

19   object.

20          Then I send them out.  I send them out, but you

21   stay here.  Ms. Gaudet comes back.  I want you to go

22   over all the exhibits with her, and then she'll take the

23   exhibits back.

24          So that pretty much is the routine.  And we'll

25   hear from the government first.

1          MS. BLOOM:  Thank you, your Honor, I just wanted

2     to go over a few things to see if they would be in the

3     charge.

4          The first one is we did, in the intent charge,

5     discuss willful blindness.  We expect that that may be

6     part of the response to a defense here and we think it's

7     appropriate.

8          THE COURT:  I'll give a charge on willful

9     blindness, yes.

10         MS. BLOOM:  Will you give the Investment Advisor

11    Charge similar to the one that is here in terms of

12    discussing what an investment advisor does and that

13    omitted fact is material.  It's on Page 12, I think, are

14    the elements of investment advisor fraud.

15         THE COURT:  (Reads.)  Um, I propose to give the

16    elements, you have, um -- the direct answer is this.  I

17    will cover all the matters that you ask from Pages 10

18    through 18.  You go into it at a level of detail that I

19    think is unnecessary.  I will explain the essential

20    elements.

21         MS. BLOOM:  And also we had an aiding and

22    abetting, a direct and vicarious liability proposed

23    charge, will you be giving that concept?

24         THE COURT:  I don't propose to give that.  The way

25    you've put this in, these are the two active

```
1    conspirators here.  That almost would be an alternative
2    theory that she stood by, did something, but he was
3    doing it.  That isn't how this evidence has gone in.
4         MS. BLOOM:  I agree that is not how the evidence
5    has gone in, but it is an alternative theory and it
6    might be responsive to a defense.  But I agree that that
7    is not our primary portrayal of the evidence.
8         THE COURT:  I don't propose to give it, of course
9    I get the chance to listen to the closing arguments and
10   I will do so.
11        MS. BLOOM:  Okay.  I think that's it, your Honor.
12        THE COURT:  Mr. O'Hara, any questions about the
13   charge?
14        MR. O'HARA:  I have no questions, your Honor, I'm
15   just a little concerned about Mrs. Herman's apparent
16   illness and here inability to, um --
17        THE COURT:  Well, we're going to go on, if she's
18   under the weather, we'll address it when it becomes an
19   issue.
20        All right.  I'll recess.  And just as soon as the
21   jurors are here --
22        Well, now let's just sketch out what we think the
23   timing is.  We've lost some time, though he's not far
24   away, he's coming in from Dorchester, so I'm not
25   crowding anyone, but, um --
```

1        So we're done with Mr. Caplitz today, fair?

2        MR. O'HARA:  Yes, your Honor.

3        THE COURT:  How long is your bank fellow going to

4  be?

5        MS. BLOOM:  We have two more witnesses, the tax

6  summary witness we expect to be half an hour on direct,

7  and the bank person records, an hour or less.

8        THE COURT:  Now let's figure this out.  Suppose we

9  don't finish the evidence today, um, it goes to the jury

10  on Monday?  The government is nodding "Yes."

11        And does that make sense, Mr. O'Hara?

12        MR. O'HARA:  Yes.

13        THE COURT:  Fine.  All right.  I will say "no

14  promises" because there will be no promises until

15  everyone rests, but at the end of the day today I will

16  also indicate that to the jury.

17        MR. O'HARA:  Excuse me, your Honor, she was

18  speaking with me.  I didn't hear you.

19        THE COURT:  Just that I will tell them, at the end

20  of the day --

21        MR. O'HARA:  Okay, fine.

22        THE COURT:  -- that it looks like it will go to

23  the jury on Monday, to be prepared to stay with us all

24  day.

25        MS. BLOOM:  May we be seen at sidebar for just one

1    moment, your Honor?

2         THE COURT:  Yes.

3

4         AT THE SIDEBAR

5         MS. BLOOM:  We were wondering whether it would be

6    wise to advise Ms. Herman on the record of her right to

7    testify?

8         THE COURT:  I never do that and the reason I don't

9    do it is I think it's chilling when the judge does that.

10   And I think she is well-advised by her attorneys and I

11   don't --

12        MR. O'HARA:  I would prefer there not be any

13   colloquy to that effect.

14        THE COURT:  And that of course confirms my general

15   rule, that people can make their own choices.

16        MS. BLOOM:  Okay.

17        THE COURT:  I mean the compliment to you all.  And

18   if she were to choose to testify, I'm leaving that open

19   by saying "no promises" on Monday.

20        But all right.  We'll recess.

21        MS. BLOOM:  All right.

22        THE CLERK:  All rise.

23        (Recess, 9:30 a.m.)

24        (Resumed, 10:10 a.m.)

25        (Defendant not present.)

1      THE COURT:  All right.  I'm advised by Ms. Gaudet

2   that Ms. Herman is ill and I understand that you pretty

3   much all agree that it might be best to suspend for

4   today and commence Monday morning.  We'll start with the

5   defense.

6      Does that make sense?

7      MR. O'HARA:  That's correct, your Honor, thank

8   you.

9      THE COURT:  Now, I can't get into the personal

10  matters but I expect her to rest and try to hydrate

11  herself and the like so she'll be ready to go on Monday.

12      Now, we've been waiting all this time for the

13  jury, it might make sense to -- well, I'm interested in

14  your advice as to how to proceed.  I want to keep their

15  attention, so I was thinking of bringing them in and

16  telling them the truth, that she's come down ill, we

17  expect she'll be okay, we're going to put it over till

18  Monday, and asking them to stay here.  So I formally

19  tell them that and tell them, you know, that they're

20  going to see different people on the weekend and can't

21  talk about the case.  I think that's how I should

22  proceed.

23      Suggestions?

24      MS. BLOOM:  Your Honor, I'm not sure whether -- I

25  don't think it's best to inform them that she is ill as

1  opposed to someone is ill.

2      THE COURT:  No, I was going to, I was going to say

3  she's ill.

4      MS. BLOOM:  I guess --

5      THE COURT:  Or you want me to say someone's ill?

6      MS. BLOOM:  Yes, someone's ill.

7      THE COURT:  You prefer that?

8      MS. BLOOM:  I prefer that.

9      THE COURT:  No problem with that?

10     MR. O'HARA:  Unfortunately she won't be here so I

11  think they may draw the obvious conclusion, but we have

12  to live with that.

13     MS. BLOOM:  The only other thing I wanted to raise

14  was whether, um -- either because it's possible we could

15  complete on Monday or because we want to -- whether we

16  want to have them available for the afternoon on Monday

17  and let them know about that.

18     THE COURT:  My thought is that we expect that it

19  will go to the jury on Tuesday and tell them that.  Do

20  you think it's likely we'll -- I'm not going to crowd

21  them into a --

22     MS. BLOOM:  It seems unlikely on Monday.

23     THE COURT:  You've got the rest of this witness,

24  you've got two other substantive witnesses, that will be

25  late morning on Monday, maybe slopping a little over

1    into Tuesday, but Tuesday is faster than we had hoped.

2    So I will tell them that we expect it on Tuesday.

3          Now, if things broke differently, then -- and it

4    was a short day on Monday, I still think it would make

5    sense to do arguments and charge on Tuesday.  Now that

6    would be my approach to it.

7          MS. BLOOM:  Yes, that makes sense, your Honor,

8    thank you.

9          THE COURT:  All right.  Let's bring the jury in.

10         (Recess, 10:15 a.m.)

11         (Jury enters, 10:16 a.m.)

12         (Defendant not present.)

13         THE COURT:  Well, good morning, ladies and

14   gentlemen.  I'm sorry for the juror who had car trouble

15   this morning.  This shows you we have to wait, we can't

16   start without someone and say, "Oh, we'll let the others

17   tell you what's going on," we have to have the entire

18   jury here.  But in the interim, while we were waiting,

19   someone's come down sick and we're not able to go

20   forward today.  So I have you in here and I'm going to

21   give you the instructions for the weekend and they are

22   simple instructions really.

23         We're up to the weekend now, we're going to excuse

24   you until 9:00 a.m. on Monday morning, and the trial

25   will go on, just as we planned, at 9:00 a.m. on Monday

1    morning.  Now, on the weekend you're very likely to see

2    people you don't see during the week and of course go

3    about your own affairs.  Have in mind that we're well

4    into this case, so you're not to talk to anyone in any

5    way, by media, phone, or face to face, about the

6    substance of this case, and don't let anyone talk to you

7    about the substance of this case.  That's crucial to the

8    integrity of these proceedings.  I'm not saying that if

9    it gets brought up, what you're doing, and you're

10   serving on a jury, that's okay, so long as you

11   immediately say, "And the judge has told us we cannot

12   say anything at all about it."

13        I have not seen any reference to the case in any

14   media, I don't suggest there will be any, if there was

15   you're to turn the dial, turn the page, you're not to be

16   looking at any reference about the case in any source

17   whatsoever.

18        The case is moving right along, I've said that,

19   and I can now tell you that the plan is that we give you

20   the case on Tuesday.  We were thinking we were going to

21   give you the case on Monday, but we can't go forward

22   today, so we think -- and no promises here, because

23   everyone has to have the chance to put on all the

24   evidence that it is appropriate to put before you, but

25   we think we'll either be done with evidence on Monday or

1    done early on Tuesday morning with evidence, and then

2    there's two important parts of the case, the lawyers get

3    the chance to sum up, to argue to you the conclusions

4    they want you to draw, and I have to charge you on the

5    law again, and it's more detailed now because I've sat

6    and as you listened to the case as it's been presented.

7    So we really think, though I cannot promise, that we

8    will give you the case on Tuesday.

9          Now, I give you that heads-up because that means

10   Tuesday is when we're going to expect that you'll be

11   available to be with us all day.  No one will be kept

12   after 5:00, but we'll expect that you'll be available to

13   be with us all day.

14         So we're going to recess now until Monday morning

15   promptly at 9:00 and we'll go on taking testimony.

16   You've not heard all the testimony, so please keep your

17   minds suspended, do not discuss the case either among

18   yourselves nor with anyone else.  You may stand in

19   recess until 9:00 a.m. on Monday morning and I'll remain

20   on the bench.

21         (Jury leaves, 10:22 a.m.)

22         THE COURT:  Please be seated.

23         What if she's not better, Ms. Bloom?

24         MS. BLOOM:  Um, I don't know, Judge.

25         THE COURT:  Well, you should be looking into that

1    possibility as should Mr. O'Hara.  I mean she could

2    waive her presence, but I'm not suggesting that.  I hope

3    she will take care of herself to be present.  But, um, I

4    would appreciate it if you would look into that

5    potential eventuality, what we should do.

6         MS. BLOOM:  Thank you, your Honor, I'll do that.

7         THE COURT:  All right.

8         Very well.  We'll recess in this case till

9    9:00 a.m. on Monday morning.  We'll recess.

10        (Adjourned, 10:25 a.m.)

11

12              C E R T I F I C A T E

13

14        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

15   do hereby certify that the foregoing record is a true

16   and accurate transcription of my stenographic notes,

17   before Judge William G. Young, on Friday, April 1, 2016,

18   to the best of my skill and ability.

19

20

21

22   /s/ Richard H. Romanow 09-16-16
     _____
23   RICHARD H. ROMANOW   Date

24

25