1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF MASSACHUSETTS

3                                No. 1:12-cr-10015-WGY

4

5

6    UNITED STATES OF AMERICA

7

8    vs.

9

10   ROSALIND HERMAN

11

12                         * * * * * * * * *

13

14                      For Hearing Before:
                       Judge William G. Young

15

16                          Sentencing

17

18                    United States District Court
                     District of Massachusetts (Boston)
                     One Courthouse Way
19                   Boston, Massachusetts 02210
                     Wednesday, July 27, 2016

20

21                         * * * * * * * *

22

23              REPORTER: RICHARD H. ROMANOW, RPR
                      Official Court Reporter
                    United States District Court
24        One Courthouse Way, Room 5510, Boston, MA 02210
                     bulldog@richromanow.com

25

1                    A P P E A R A N C E S

2

3   SARA M. BLOOM, ESQ.
    MARY B. MURRANE, ESQ.
4       United States Attorney's Office
        J. Joseph Moakley U.S. Courthouse
5       1 Courthouse Way, Suite 9200
        Boston, Massachusetts 02210
6       (617) 748-3971
        Email: Sara.bloom@usdoj.gov
7       For the United States

8

9   RAYMOND A. O'HARA, ESQ.
        Law Office of Raymond A. O'Hara
10      1 Exchange Place
        Worcester, Massachusetts 01608
11      (508) 831-7551
        Email: Oharalaw@hotmail.com
12      For the defendant

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              P R O C E E D I N G S
2         (Begins, 10:00 a.m.)
3         THE CLERK:  Now hearing Criminal Matter 12-10015,
4    the United States of America versus Rosalind Herman.
5         THE COURT:  Good morning.  We welcome to the bench
6    this morning, the Honorable Tomo Yakota.  Judge Yakota
7    is a judge in the Toyko District Court.  He is studying
8    and visiting here in the United States.  And when we
9    have a visiting judge, and indeed this morning we have
10   two, but I invite them to sit on the bench and they can
11   actually see things the way I see them.
12        Very well.  Would counsel introduce themselves.
13        MS. MURRANE:  Good morning, your Honor, Mary
14   Murrane on behalf of the United States.
15        MS. BLOOM:  Good morning, your Honor, Sara Bloom
16   on behalf of the United States.
17        MR. O'HARA:  Good morning, your Honor, Raymond A.
18   O'Hara on behalf of Mrs. Herman.
19        THE COURT:  Who is present.
20        May I speak to her directly?
21        MR. O'HARA:  Yes.
22        THE COURT:  Ms. Herman, have you read the
23   presentence report that's been prepared in your case?
24   Have you read it?
25        MR. O'HARA:  Yes.
```

1          THE COURT:  Yeah, I'm talking to her.

2          THE DEFENDANT:  Um, I don't know which one

3     you're --

4          THE COURT:  There is something called a

5     "presentence report" and it outlines the calculations

6     that I am advised by the sentencing commission.

7          Have you seen it, ma'am?

8          (Pause.)

9          THE DEFENDANT:  I don't remember, to be honest

10    with you.

11         THE COURT:  Well, take a look at mine.

12         (Passes to defendant.)

13         MS. BLOOM:  Your Honor, would you like to keep

14    yours?  I have a copy and I would be --

15         THE COURT:  Oh, yes, would you.

16         (Hands over to defendant.)

17         THE COURT:  Have you seen that document?

18         (Pause.)

19         THE DEFENDANT:  It might have been the document I

20    couldn't open.  I don't think I've seen this.  But I

21    will read it, if you don't mind?

22         (Reads.)

23         THE DEFENDANT:  Oh, I have seen this.  I remember

24    now.

25         THE COURT:  You do?

```
1           THE DEFENDANT:  Yes.

2           THE COURT:  Have you read it?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Have you talked it all over with

5    Mr. O'Hara?

6           THE DEFENDANT:  Yes, we did.

7           THE COURT:  Do you think you understand it?

8           THE DEFENDANT:  Yes, I do.

9           THE COURT:  All right.  Thank you.

10          Nothing's been withheld from the presentence

11   report under the rules of criminal procedure?

12          PROBATION OFFICER:  No, your Honor.

13          THE COURT:  Very well.

14          This is a sentencing that proceeds in five steps.

15   In this case certain victims wish to address the Court,

16   that is their right, and the Court welcomes such

17   statements and that's where we will begin.  I just want

18   to outline the steps so we know what we're going to do.

19   I'll hear victim statements, then I will do the

20   necessary arithmetic calculations.  That's the next

21   three steps.  I calculate the highest sentence that

22   under the Constitution I could impose -- that doesn't

23   mean I'm going to impose it, but I calculate it.  I look

24   at the average sentences for offenses of this sort.  I

25   do not sentence from any average, but I look at the
```

 1    averages because they tell me the weight to be given to

 2    the advisory sentencing guidelines.  Then I calculate,

 3    as the law requires, the advisory sentencing guidelines.

 4         As to the arithmetic steps, if counsel would

 5    differ with any of the Court's calculations, I want you

 6    to interrupt me and I will try to resolve the matter at

 7    that time.

 8         Then we come to the fourth and equally -- perhaps

 9    the most important step, that's fashioning a fair and a

10    just sentence for Ms. Herman, having in minds the needs

11    of society, the principles of criminal sentencing, and

12    her own personal situation.  To do that we'll hear from

13    the government, we're hear from defense counsel, and if

14    Ms. Herman wishes to be heard from herself, we'll hear

15    from her.

16         All right.  Now, I'll turn to the government

17    because you've spoken with the victims and you have some

18    sense of how we're going to proceed and, Ms. Murrane,

19    why don't you tell me.

20         MS. MURRANE:  Thank you, your Honor.

21         So there are three statements that victims have

22    requested be read to the Court this morning, two of them

23    are being read by folks who have been designated by the

24    victims --

25         THE COURT:  That's acceptable.

1      MS. MURRANE:  -- and then one victim is here.  So

2  the first would be from our office, Valerie Gauthier,

3  who is a victim witness advocate, and she's going to

4  read a statement from Susan and Martin Paley.

5      THE COURT:  I'll hear Ms. Gauthier.  And these

6  statements are -- for each of the people who will speak,

7  I want to accommodate you.  I think it makes sense,

8  Ms. Gauthier, why don't you come right up inside the bar

9  enclosure there -- or wherever you'd be comfortable, and

10  I can hear you from there.  I want to hear you and

11  listen to you and I want to get it on the record.

12      MS. GAUTHIER:  Absolutely.  Thank you, your Honor.

13      (Moves.)

14      MS. GAUTHIER:  "Rosalind Herman is a conniving

15  disgusting reprobate who deprived us of our retirement.

16  She used our money on herself while knowing full well

17  this was supposed to be invested.  Rosalind is a thief

18  and a liar.  She has caused us great financial hardship.

19  Please show her no mercy and sentence her to the maximum

20  penalty allowed.

21      Thank you, Martin and Susan."

22      THE COURT:  Thank you.

23      Ms. Murrane.

24      MS. MURRANE:  The second is the victim, Bruce

25  Gilmartin, has asked that his attorney, Jeffrey Nathan,

1    who is here, read his statement.

2        THE COURT:  And I'll hear you from there,

3    Mr. Nathan.

4        MR. NATHAN:  Thank you, your Honor.  My name is

5    Attorney Jeffrey Nathan and on behalf of Bruce Gilmartin

6    we got the phone-in letter and then last night and this

7    morning I spoke with him, he's got some additional

8    remarks.  On July 18th, he states:

9        "You have heard my testimony regarding the funds

10   stolen from me by Greg Caplitz and Rosalind Herman, but

11   that does not capture all the rage, fear, and stress

12   that I have experienced as a victim.

13       I have worked at jobs steadily since I was 15

14   years old.  I am a veteran of both the war in Korea and

15   Vietnam.  I spent my life providing for my two children

16   and for over a decade taking care of my elderly parents

17   in my home.  I'm 75 years old.  I suffer from diabetes

18   and other medical conditions.

19       The stress of living with the worry over finances

20   has taken an additional toll on my health.  Imagine my

21   feelings, I have saved as much money as possible trying

22   to invest wisely so I could live comfortably, not

23   extravagantly in my old age.  I now find my life savings

24   ravished by the financial investors that I hired and

25   trusted to take care of my life savings.  For the rest

1  of my life I must sustain myself on a limited income.  I

2  was counting on the IRA investments to help me pay

3  property taxes and heating bills and cover long-term

4  care should I need it.  Right at the moment my diabetes

5  is overpowering me and I've lost most of my mobility.

6  There are new drugs on the market that would help me,

7  but insurance drug plans won't cover the costs.  If I

8  never had these two thieves steal me blind, I would be

9  able to pay for these new drug therapies to slow this

10  disease down.

11      What isn't factored in this case is the fact that

12  Caplitz and Herman invested a sum of $400,000 in a

13  scheme that promised a return of 3,000 to $6,000 a month

14  when in fact we got very little return.  We have no way

15  of recovering any of this.  All total they have lost me

16  $500,000 to gamble away on the slots.

17      My family has worked too hard to have this happen.

18  I had almost hoped that my two children and my three

19  grandchildren would inherit my nest egg, both are very

20  responsible people and would not waste the opportunity.

21  Not so now.  But now 3/4ths of my savings has vanished

22  in the pockets of Gregg Caplitz and Rosalind Herman.

23      They deliberately took large withdrawals from my

24  IRA without my knowledge by fraudulent means.  They

25  knowingly broke the trust that comes with taking on the

1    role of financial advisor.  They can only think of the

2    victims as ignorant slobs and that they deserved to

3    acquire all of their assets for their own use.

4         As far as sentencing goes, both deserve to serve

5    the maximum time allowable for these crimes.  While in

6    theory if given a short sentence so that they may find

7    gainful employment upon release and begin making

8    payments and restitution for victims, in reality it is

9    unlikely that convicted felons will be able to find

10   well-paying jobs.  Restitution will amount to pennies on

11   the dollar and I personally will get greater

12   satisfaction from seeing both of these perpetrators

13   incarcerated for as long as possible.  It is the only

14   compensation that I am likely to get for the deprivation

15   that I will face for the rest of my life and the loss of

16   the inheritance my children now face.  They did not have

17   mercy on me and do not deserve mercy by this Court.

18        Sincerely, Bruce Gilmartin."

19        Now, subsequent to Mr. Gilmartin writing this, he

20   and I spoke -- he's asking that this defendant, if

21   sentenced today, be incarcerated today, if you impose a

22   sentencing of incarceration, unless she brought a check

23   for restitution, because she knows that that's what

24   Mr. Gilmartin really wants.

25        (To defendant.)  Do you have a reimbursement check

1    for my client?

2         THE COURT:  No, wait a minute.  I preside here.

3         MR. NATHAN:  Yes, your Honor.

4         THE COURT:  Now, your client has a right to make

5    his statement.  I afford full latitude to allow such

6    statements to be made and I take them into account, but

7    you're not questioning anyone.

8         MR. NATHAN:  Yes, your Honor.

9         THE COURT:  You're not establishing conditions.

10   This is not a case between your client and Ms. Herman,

11   it's a case brought by the United States of America.

12   Under our laws they give your client the right to be

13   present here and to be heard, either personally, by

14   letter, or as you have effectively read his letter to

15   the Court, and I welcome it, but all other conditions

16   are my responsibility after a cool and careful

17   reflection on all the facts.  It's not given to the

18   wronged individual to set conditions.  Thank you very

19   much.

20        All right.

21        MS. MURRANE:  Thank you, your Honor.

22        The third, um, statement for this morning is from

23   the victim Carmine Leuci, who is here today.

24        THE COURT:  Yes, and Mr. Leuci.

25        MR. LEUCI:  It is both sad and disgusting for any

1    of us to have to be here today under these

2    circumstances.  Rosalind Herman, you are cold,

3    deceitful, calculating, uncaring, cruel, and most of all

4    a thief and a criminal, and I also might add a monster.

5    You did not steal from the rich, but you stole from

6    hardworking, honest people with whom they had faith with

7    both you and Gregg Caplitz handling their finances.

8         You stole from people that were sick, from a woman

9    who is paralyzed in a wheelchair, from a person in a

10   nursing home, and from a person dying with cancer and

11   who has since died.  In most cases you stole their life

12   savings for your personal benefit.  The person that is

13   in the nursing home with dementia and his family was

14   depending on his assets to keep him comfortable and

15   being taken care of.  What happens to him now?

16        How do you get up in the morning, look in the

17   mirror, and live with yourself?  Well, guess what, where

18   you're going there may not be any mirrors.

19        Perhaps if any of these monies that had been

20   stolen were used for beneficial needs such as a life or

21   death situation, it might have made some sense, however

22   this was greed, but instead you gambled, ate out at

23   restaurants, paid for vacations for family members,

24   bought gas and cigarettes, and for personal expenses.

25   Then there is the gambling from your home television.

1    Did you get that lazy that you couldn't drive to the

2    casinos?  All wasted, not one cent put to good use.  Did

3    you think justice was not to come?

4          Living on a limited income and living on the coast

5    close to the ocean in Newburyport, Massachusetts, owning

6    property has becoming increasingly expensive.  Not only

7    did we have medical expenses we were responsible for, we

8    also had a large tax increase, and we were hit with a

9    large increase for flood insurance since we were living

10   next to the ocean.

11         The way this supposedly hedge fund program was

12   explained to us by you and Mr. Caplitz, we were to

13   receive approximately $10,000 the first of every

14   January.  We felt this would help us to continue to live

15   on Plum Island, the place we called home and loved for

16   many years.  However, due to this scam we were forced to

17   sell and move, not to mention the medication and the

18   doctors that I had to see for all this stress and

19   anxiety.

20         We can only hope the Court gives you the maximum

21   penalty allowed by law and hope that a day does not go

22   by that you are totally not miserable in your new

23   surroundings soon to be called home.  Thank you.

24         THE COURT:  Very well.

25         Now, moving on to the calculations that the Court

1    makes.

2        As I understand the Constitution of the United

3    States, the maximum sentence in our quasi-determinate

4    sentencing system is 135 months in prison.  That's not

5    the statutory maximum, but that's the top of the

6    advisory guideline given the appropriate calculations.

7    I -- my understanding is that given the detailed

8    sentencing guidelines, which Congress has approved, it

9    would be unwarranted discretion to sentence any higher

10   than that amount.

11       I also consult the average sentences for offenses

12   of this sort.  As I say, I do not sentence from any

13   average, but I look at the averages because they give me

14   some idea of the -- of what actually is imposed.  In

15   this case I look first to the sentences of the --

16   derived from the United States Sentencing Commission and

17   that has the advantage of letting me see a great number

18   of sentences but the disadvantage that they're all

19   grouped under the general heading of "fraud" and you

20   can't really tell what the offense was, but for what

21   they're worth, since Booker, the average sentence

22   nation-wide for fraud is 30 months.  In the First

23   Circuit, it is 26 months.  In the District of

24   Massachusetts, it's 34 months.

25       Mr. Richard Romanow, the Court Reporter in this

```
 1   session, maintains an offense-specific database started
 2   by his predecessor, the Reporter, Donald Womack, I
 3   always consult that, and that has the advantage of
 4   giving me the specific offenses of conviction, but it
 5   has the disadvantage that there aren't very many of
 6   them.  Specifically if I looked at the offense that I
 7   have sentenced most frequently since Booker, it is for
 8   conspiracy, and there are 14 such sentences with an
 9   average sentence of 23 months.  I've sentenced once for
10   a violation of the Investment Advisors Act -- I take
11   that back, I've sentenced twice for that offense, the
12   average is 129 months.  So there's not really an
13   average.  The law requires that I accurately calculate
14   the sentencing guidelines and I proceed to do so at this
15   time.
16        First, we'll group the offenses first as to the
17   conspiracy charge.  The base -- the total offense level
18   here is 14 levels -- oh, I take that back, just a
19   moment.  The base offense level is 7, I add 14 levels
20   because the loss here is more than $550,000, but not
21   more than $1,500,000.  I increase by an additional four
22   levels because this offense has occasioned substantial
23   hardship to five or more victims.  I increase by another
24   four levels because the offense involved violations of
25   the securities law and at the time of the offense the
```

1    offense was an investment advisor -- the defendant was

2    an investment advisor.  That takes us to an adjusted

3    level of 29.  I add another two levels because

4    Ms. Herman knew or should have known that the victims of

5    the offense were vulnerable.

6         The second group is a corrupt endeavor to impede

7    the administration of our Internal Revenue Laws.  The

8    base offense level is 18, I add two levels because

9    the -- there was not reported income exceeding $10,000

10   derived from criminal activity.  So I add those two

11   levels to take us to 20.

12        Under the grouping rules, the -- I take the

13   highest of the two, the combined total adjusted offense

14   level is 31.  In this case the criminal history category

15   is 1.  That leads us to a guideline sentence of not less

16   than 108 nor more than 135 months, a period of

17   supervised release of not less than 1 nor more than 3

18   years, a fine of not less than $15,000 nor more than

19   $2,770,514, a restitution amount in the sum of

20   $1,819,391.87, and a special assessment of $700, $100

21   dollars on each count.

22        Ms. Murrane, arithmetically are the guidelines

23   properly calculated?

24        MS. MURRANE:  Yes, the only addition I would

25   include is that it would also include forfeiture of

1   $1,323,807.

2        THE COURT:  That's accurately stated and the Court

3   so declares.

4        Mr. O'Hara, arithmetically are the guidelines

5   properly calculated?

6        MR. O'HARA:  Yes, your Honor, they are and, um, I

7   would renew any objections I made at the enhancement

8   hearing.

9        THE COURT:  Your rights are saved.  We held a

10  special hearing to make the findings that undergird --

11  on actual evidence that undergird the conclusions I just

12  stated and your rights are saved as to any objections

13  there made.

14       All right, now we turn to the fifth step, to

15  fashion a fair and a just sentence in this particular

16  case.  I have read all the papers that have been

17  submitted to me.  I express appreciation for the very

18  thorough sentencing memoranda.  I'll hear the

19  government.

20       MS. MURRANE:  Thank you, your Honor.

21       The government recommends a sentence of 9 1/2

22  years, or 114 months incarceration, 3 years of

23  supervised release, restitution of $1,819,391.87,

24  forfeiture of $1,323,807 consistent with the order of

25  forfeiture that this Court has already entered, with

both restitution and forfeiture joint and several with

Gregg Caplitz, no fine and a special assessment of $700.

9 1/2 years is a very significant sentence and for

this defendant and for these crimes it is wholly

appropriate.  Letters written on behalf of the defendant

submitted to the Court talk about how the defendant

placed family first and that may well be true.  It's

certainly clear that she didn't place the victims of

this crime first, the folks who believed that they were

being prudent by hiring an investment advisor, someone

who is a professional in the industry to manage their

retirement.

Folks like Patricia Wentzell who worked for 28

years as a telephone operator and saved every penny so

that she knew she would be in a position to take care of

herself and her health issues as she aged.  Folks like

the Bigelows who had a small plumbing company and saved

their money so that they could have a comfortable

retirement.  Your Honor had the benefit of hearing the

testimony from many of these victims, James Connell,

Carmine Leuci, Bruce Gilmartin, and Susan Paley, regular

folks who did not have significant income and who were

not sophisticated investors.

Yes, Rosalind Herman put her family first when she

took that money from these investors and instead of

1  investing it spent it on her family.  And not just on

2  necessities, although as the Court saw from the bank

3  records that were admitted in this case, there was

4  plenty of that, but also on luxuries too like BMWs and

5  Jaguars, trips and gambling.

6      And this was not something that the defendant did

7  once or did for a short period of time.  As Trial

8  Exhibit 103 laid out, that chart that showed each of the

9  payments by the various victims, this defendant took

10  money from these investors from 2008 to 2013.

11  Incredibly she continued to take money and spend the

12  money from these investors after first Gregg Caplitz was

13  indicted and then for another year after she herself had

14  been indicted.

15      Pleasing family first with this defendant in these

16  circumstances does not offer any basis for a shorter

17  sentence, quite the opposite.

18      And the fraud was not limited to that 2008 to 2013

19  time period, it lasted a decade dating back on her

20  conviction for conspiracy to defraud the IRS in a

21  corrupt endeavor, to impede the administration of the

22  IRS.  For a decade this defendant did whatever it was

23  that she needed to do to make sure that money came into

24  her bank account and only left it when she decided to

25  spend it.  It was not an episode of bad judgment, it

1    reflected years and years of greed, manipulation, and

2    putting herself and her family above anything and

3    everything else.

4         THE COURT:  Let me ask you this, though this is a

5    bit theoretic, and I don't impugn your recitation of the

6    facts, in light of the jury verdict you're

7    well-authorized to argue those facts and the Court fully

8    accepts them.

9         My question goes to the fact that the sentencing

10   guidelines, I have, as I must under the sentencing

11   guidelines, I've added 14 levels for the loss.  Now

12   numerous commentators have criticized that as a measure

13   of culpability.  How does that play out in this case?

14        MS. MURRANE:  Well, I think that if -- I think

15   that the enhancements added, based upon the loss, are

16   entirely appropriate.  If this case was a loss of

17   $10,000 from one person's nest egg, it would be an

18   entirely different crime and warrant an entirely

19   different sentence than this circumstance where we have

20   $1.3 million, almost $1.4 million from over a dozen

21   different victims, and I think while in the abstract it

22   might look as though it's just looking at numbers to

23   come up with some arbitrary enhancement, the numbers

24   actually have meaning.

25        In this case, in particular, where these numbers

1  reflect actual savings that people had set aside after

2  years of work to plan their retirement, they have

3  meaning and should be reflected in the sentence that's

4  imposed.

5          THE COURT:  Thank you.

6          MS. MURRANE:  Um --

7          MS. BLOOM:  I just want to add this one --

8          THE COURT:  I'm not accustomed to having some

9  tag-team here.

10          MS. BLOOM:  I won't add then.

11          THE COURT:  All right.  I always respect,

12  Ms. Bloom, you're speaking, but I think one is

13  sufficient for the government.

14          Ms. Murrane.

15          MS. MURRANE:  So I think, your Honor, while you're

16  pointing to the guidelines as to the enhancement of the

17  14 points, um, when you consider the 3553 factors, the

18  nature and circumstances of this offense and the history

19  and characteristics of this defendant are of primary

20  importance in fashioning the appropriate sentence.  The

21  offense is both the tax charges and the wire fraud and

22  the investment advisor fraud charges, but particularly

23  the latter, are very very serious, and as this Court

24  heard from the victims who testified in this case, they

25  had a very real and serious impact.

1      The defendant's history and characteristics have

2  been established by -- for years, actually a decade, of

3  fraud and deceit, and characteristics that this Court

4  heard the defendant had displayed at many many turns,

5  lying to an online gambling company telling them that

6  she was blind so that she could get her money back, and

7  before your Honor using -- setting forth, um, a basis to

8  have victims denied of justice at trial again and again

9  and again and again by delay of this case.

10      THE COURT:  Well, wait a minute.  I -- that's a

11  nonstarter.  If this case was delayed, for whatever

12  reason, the Court bears the responsibility for that, and

13  I accept my responsibility on that.

14      It -- in this Court's eyes it was vitally

15  important that Ms. Herman have competent and vigorous

16  representation.  She has had such representation.  I

17  honor Mr. O'Hara for his efforts.  And, yes, it was

18  delayed.  I regret that.  But I'll take responsibility

19  for that.  That's not going to count here.

20      Anything else?

21      MS. MURRANE:  Understood, your Honor.

22      To this day the defendant has yet to show any

23  remorse or accept any responsibility for her conduct and

24  this is despite the fact, that is shown by the bank

25  records, the defendant received and spent the lion's

1    share of the proceeds from these crimes.  She continues

2    to assert that she in fact did nothing wrong and that

3    all blame lay at the foot of Mr. Caplitz, that he alone

4    is responsible and incredibly letters submitted on her

5    behalf suggest that she is a victim in this case.

6          There are victims in this case and there are many

7    of them and the defendant is not one of them, she helped

8    to create them.  These 3553 factors warrant the

9    imposition of a significant sentence, the one

10   recommended by the United States, which is at the bottom

11   end of the guidelines, and a sentence of 9 1/2 years is

12   sufficient but not greater than necessary to comply with

13   the purposes of 3553.

14         THE COURT:  Thank you.  Mr. O'Hara.

15         MR. O'HARA:  Thank you, your Honor.  I just wanted

16   to point out that I was appointed to represent

17   Ms. Herman back in November of this year, a firm trial

18   date was set, and that date was moved up by a couple of

19   weeks.

20         THE COURT:  I appreciate that.  What I said stands

21   and as I try to be transparent, that's going to play no

22   role in the sentence here.  Now let's talk about the

23   actual facts as established by the jury verdict.

24         MR. O'HARA:  This is not the first case I've had

25   where there are allegations of fraud, it's not the first

1    case I've had where there are allegations of investment

2    fraud, it is the first case I've ever had which

3    involved, um, failure to comply with income tax

4    requirements and it's also the first case I've ever had

5    involving hedge funds.  I knew nothing about hedge funds

6    except for what I had read in the paper about them.

7           And to educate myself, in order to represent her

8    better, I contacted a number of people, including the

9    attorney who was representing Mrs. Herman and

10   Mr. Caplitz in a concurrent civil action with the

11   Securities and Exchange Commission, and he was of no

12   help at all, although he has some background in this

13   area of law, he only provided me with one little kernel

14   of information, which I'll relate later.  But eventually

15   I did a lot of research on the internet and then I

16   reached out to a former client of mine, a Mr. Michael

17   Zanetti, Z-A-N-E-T-T-I, who was convicted of a major

18   fraud participation, it was multinational out in

19   Springfield, but he was a graduate of Brown University

20   with a degree in finance, he's also a law school

21   graduate, and he also contained and obtained the same

22   Securities and Exchange Commission licenses that

23   Mr. Caplitz had, and he explained to me the rigor and

24   the difficulty in the education that's necessary before

25   you can get those licenses.  And when I asked him to

explain to me, if he could, how hedge funds worked, he just laughed at me and said there's not enough time, they're too complicated, you know, it just is almost impossible.  So he gave me the bare bones of it.

I also contacted some of the attorneys who were involved with Mrs. Herman and Mr. Caplitz in the past to see if they could shed some light on their relationship, they were singularly and plurally unwilling to be of much help with the exception of Attorney Robert Cohan who had represented them in a number of civil suits, I was impressed with his pleadings, he also represented Mr. Caplitz at the hearing before the enforcement board for certified financial planners.  And I asked him, I said, you know, "I've read all these pleadings, I've seen all these cases, I've seen all these entries of summary judgment, I've seen how much money was spent on lawyers, what was going on, why did these cases go forward, why didn't they settle?  Why were plaintiffs added or defendants added who were later dropped?"  And he said "The only thing I can tell you is that when push came to shove she would follow Mr. Caplitz's advice over mine."  And that was about all he could tell me.

Mr. Andrews, who represented both of them before the Securities and Exchange Commission called me shortly after the jury verdict came in, and although he was of

1   no help to me in preparing for the defense, he

2   commiserated with the result and he said, "You know

3   what?  In my opinion she didn't have the gray matter to

4   understand what was going on here regarding this

5   investment fraud."

6       So I bring that up only to point out that there is

7   a disparity here between the offense conduct of

8   Mr. Caplitz and Ms. Herman, which I brought up ad

9   infinitum during my defense of Ms. Herman and also in

10  motions that I filed subsequent to the verdict.  There's

11  also a disparity between their educational background,

12  between their intelligence, and between their ability to

13  articulate.

14      And, um, Ms. Herman, for want of a better word,

15  does not take care of herself.  The impression I got

16  from having met with her extended family members is that

17  she takes care of everybody else.  As your Honor knows,

18  she has one son who had brain damage from a traffic

19  accident, her older son suffers from a minor learning

20  disability, their employment records are spotty, she

21  continually took care of them, she continually took care

22  of her younger sister and her older sister and provided

23  them with employment.  When her grandchildren were born,

24  her son and her daughter-in-law were out of work and she

25  took care of them.  And she doesn't go to the doctor,

she doesn't take care of herself, she is emaciated.  And
during the trial, as your Honor knows, she became ill
and she was actually admitted to the hospital in
Winchester.  I've paid for the medical records, they've
never arrived.  I have nothing except a note that I
received indicating that she was being released to come
to court on April 4th against her physician's advice, so
she was present during the trial although she was in a
weakened condition.

I ask the Court to take into consideration the
disparity between the conduct of Mr. Caplitz and
Ms. Herman.  Yes, this was a conspiracy and it involved
more than one person, I understand that monies were
spent that were not hers, but in terms of stealing money
from these people, in terms of forging signatures and
withdrawing money without their permission, she had
nothing to do with that, and Mr. Caplitz admitted during
his testimony that he never told her that he was
stealing from his clients, that he was forging their
signatures, or even that he was borrowing money from
them.  He also admitted during his testimony that he was
assuring her that she had no tax consequences.  So I
would ask the Court to keep that in consideration.

The sentence recommended by the government, given
her condition, I would suggest to the Court is

1      tantamount to a death sentence.  She has worked for 45
2      years, starting off when she was 15 years old, serving
3      food in a cafeteria.  She doesn't have anything that was
4      ever given to her, as she was growing up, whatever she
5      did, she earned on her own, she worked two and three
6      jobs, she managed to put down a downpayment first on a
7      town home, then on a house that she lives in with her
8      husband, and she's living there with him off and on
9      between being in Las Vegas and coming here for about 10
10     years.
11          In 2012, your Honor, he suffered a serious heart
12     attack, he had a history of heart problems, but it was
13     the heart attack in 2012 which resulted in his almost
14     complete incapacitation, and since 2012 she has been his
15     sole caretaker.
16          She has difficulty driving a car.  She basically
17     stays home with him.  And once again I would ask the
18     Court to take into consideration what I've represented
19     in my sentencing report, I'm not going to go over that
20     again, it's quite lengthy, along with the disparity
21     between the conduct between Mrs. Herman and Mr. Caplitz,
22     and impose a sentence that reflects that disparity.
23          Thank you.
24          THE COURT:  Thank you.
25          Ms. Herman, you have the right to talk to me

1    directly.  You are not required to.  If you want to,

2    I'll hear you now.

3          THE DEFENDANT:  Your Honor, and to all the

4    victims, I am extremely sorry from the bottom of my

5    heart and soul.  As I sat through this trial I was in

6    shock and disbelief at all the events Caplitz repeated

7    here, every single one of them I am in disbelief.

8          I trusted Mr. Caplitz as a compliance officer and

9    a human being.  I trusted him to follow the instructions

10   of the New York law firm which I hired.  I had no idea

11   he was stealing money and forging people's signatures.

12   If I knew that, I would have called the police myself.

13         I never knew Mrs. Connell was ill.  I didn't

14   even -- I didn't know her really that well at all.  I

15   hardly knew any of the clients.  I cannot believe and I

16   am horrified by his ruthless and heartless acts.  I

17   truly am sorry.

18         Your Honor, I -- I have lost everything I worked

19   35-plus years for and I hope everyone believes how sorry

20   I am for what Mr. Caplitz did.  Thank you.

21         (Pause.)

22         THE COURT:  Ms. Rosalind Herman, in consideration

23   of the offenses of which you stand convicted, the

24   principles of 18 United States Code, Section 3553(a),

25   the information from the United States Attorney, your

1    attorney, the probation officer and yourself, this Court

2    sentences you to 7 years in the custody of the United

3    States Attorney General.  The Court sentences you to 7

4    years in prison on each of the counts of wire fraud, the

5    sentence on each count to run concurrent, one with the

6    other.  The Court sentences you to 5 years on the count

7    of conspiracy to run concurrent with the sentence just

8    imposed.  The Court sentences you to 5 years on the

9    violation, the willful violation of the sections of the

10   Investment Advisors Act to run concurrent with the

11   sentence just imposed.  The Court sentences you to three

12   years on the corrupt endeavor to impede the

13   administration of the Internal Revenue Law, which

14   sentence will run concurrent with the sentences just

15   imposed.  So the total sentence is a 7-year sentence --

16   84 months.

17        The Court places you on supervised release for a

18   period of 3 years with all the general conditions of

19   supervised release and the following special conditions.

20        You're prohibited from possessing a firearm, a

21   destructive device, or other dangerous weapon.  You're

22   prohibited from engaging in an occupation, business, or

23   profession that requires or enables you to sell

24   insurance, make financial investment, or handle client

25   funds.

1       The Court imposes upon you restitution in the

2   amount of $1,819,391.87 in accordance with the schedule

3   furnished to the Court setting forth the interests of

4   each of the individuals who lost money and the interest

5   of the IRS.  The sentence of restitution is joint and

6   several with the restitution imposed upon the defendant

7   Gregory Caplitz.  You are to pay the balance of the

8   restitution according to a court-ordered repayment

9   schedule.

10      You're prohibited from incurring new credit

11  charges or opening additional lines of credit.  You're

12  required to provide the probation office access to any

13  requested financial information, which may be shared

14  with the Financial Litigation Unit of the United States

15  Attorney's office.  You are -- I shall impose -- I must

16  impose a mandatory special assessment of $700 as

17  required by the law.  I impose forfeiture as already

18  decreed.  There will be no fine due to your inability to

19  pay a fine.

20      As requested in your sentencing memorandum, the

21  Court recommends to the Bureau of Prisons that you first

22  be incarcerated at a Bureau of Prisons medical facility

23  for a complete evaluation of your medical situation such

24  that an appropriate place of incarceration may be found.

25  Now, let me explain this sentence to you.

1        Ms. Herman, you're in denial here.  I don't doubt

2   that Mr. Caplitz was the brains here, I haven't doubted

3   that for a moment, but you knew precisely what was going

4   on -- I take that back, not precisely, you knew what was

5   going on was criminal from the get-go, and you knew that

6   you were stealing people's money, for years and years

7   you were stealing people's money.  This is a fair and a

8   just sentence.  It takes into account all aspects so

9   ably argued by the government, by Ms. Murrane, but also

10  by Mr. O'Hara.

11       You have the right to appeal from any findings or

12  rulings the Court has made against you.  Should you

13  appeal and should your appeal be successful, in whole or

14  in part, and the case remanded, it would be resentenced

15  before another judge.  Mr. O'Hara, if an appeal is

16  decided upon and you want transcript, seek it from this

17  session of the court because I'll turn it around right

18  away.

19       Do you understand?

20       MR. O'HARA:  I've already done that, your Honor.

21       THE COURT:  And I appreciate that.

22       Now, I'm truly concerned, Ms. Herman, that you are

23  in such denial here and I do think that the interests of

24  justice are best served if you are taken into custody

25  right away.

1          Custody, Mr. Officer.  Very well.

2          MR. O'HARA:  Your Honor, if I may?

3          THE COURT:  Yes, I'll hear you.

4          MR. O'HARA:  I would point out that on the last

5    day of this trial when she was sick, she did come to

6    court, although her doctors advised her to stay in the

7    hospital.  So she's certainly not a risk of flight.  And

8    her opinions about what happened I think are consistent

9    with the testimony that was heard at trial.  I would ask

10   that the Court consider letting her self-report,

11   especially if she has to go to a federal medical center.

12         The medical facilities of Wyatt are contracted out

13   and in my opinion they're terrible, and to incarcerate

14   her down at Wyatt for the 6 to 8 weeks that it's going

15   to take for the federal Bureau of Prisons to determine

16   what facility she should report to I think would be

17   cruel and unusual given the fact that she's 61 years

18   old, she's in frail physical condition, and she has no

19   criminal history, and she has no place to go, she has no

20   money, she's homebound with her husband.

21         THE COURT:  It's not the risk of flight that

22   concerns the Court, what concerns the Court is that she

23   may do violence to herself and candidly her health, both

24   physical and mental, in light of everything I've heard,

25   is a matter of concern.  She's remanded to the custody

1   of the marshals.  That's the order of the Court.

2      We'll recess.

3      (Ends, 11:00 a.m.)

4

5          C E R T I F I C A T E

6

7      I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

8   do hereby certify that the foregoing record is a true

9   and accurate transcription of my stenographic notes,

10   before Judge William G. Young, on Wednesday, July 27,

11   2016, to the best of my skill and ability.

12

13

14

15   /s/ Richard H. Romanow 09-16-16

     _____

16   RICHARD H. ROMANOW   Date

17

18

19

20

21

22

23

24

25